# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

United States Courts
Southern District of Texas
F I L E D

JUN 0 6 2025

Nathan Ochsner, Clerk of Court

| | | |
|---|---|---|
| In re: | | |
| Charles Mosely **DEBTOR**, | § | CASE NO. 25-31187 |
| | § | |
| | § | |
| Charles Mosely **PLAINTIFF**, | § | |
| | § | CHAPTER 13 |
| | § | |
| | § | |
| SELENE FINANCE LP **DEFENDANT**, | § | Adv. Proc. No. _25-3365_ |
| | § | |

## DEBTOR'S FIRST AMENDED ADVERSARY COMPLAINT FOR

## RESPA AND DTPA VIOLATIONS

COMES NOW, Plaintiff/Debtor, Charles Mosely, who respectfully files Complaint For Respa and DTPA Violations, Accounting, And Injunctive Relief for wherein Plaintiff/Debtor respectfully represents, alleges, and states as follows:

## I. JURISDICTION AND VENUE

This Adversary Proceeding is one arising under the Plaintiffs Bankruptcy Case No. 25- 31187 under Chapter 13 of Title 11.

This Court has jurisdiction pursuant to 28 US.C. §§ 157 and 1334. This adversary proceeding is a core proceeding under 28 U S.C. § 157(b)(2).

Venue is proper under 28 U.S.C. § 1409(a), as this proceeding arises in and relates to a case under Title 11 pending in this district.

1

This action involves claims arising under the Real Estate Settlement Procedures Act "RESPA"), 12

U.S.C. § 2601 et seq., and the Texas Deceptive Trade Practices Act ("DTPA"), Tex. Bus. & Com.

Code § 17.41 et seq.

## II. PARTIES

Plaintiff/ Debtor, Charles Mosely, reside in Houston, Harris, Texas,

Defendant, Selene Finance LP (hereafter referred to as "Servicer") is a foreign entity doing

business in Houston, Harris County, Texas. Selene Finance LP is Texas corporation duly

authorized to do business in Texas, 3501 Olympus Blvd. 5th Fl, Ste. 500, Dallas, Texas 75019.

Defendant may be served by serving its registered agent CORPORATION SERVICE COMPANY,

1201 Hays Street, Tallahassee, FL 32301,

## III. FACTUAL ALLEGATIONS

Plaintiff is the owner of real property located at 3005 Nita, Houston Texas 77051 and is the

obligor on a mortgage loan serviced or held by Defendant

On or about October 22, 2021, Plaintiff submitted a Qualified Written Request ("QWR") to

Defendant pursuant to 12 U.S.C, § 2605(e), seeking clarification of account errors, fees, and

misapplied payments.

A true and correct copy of this QWR is attached hereto as Exhibit A.

Defendant failed to acknowledge or adequately respond within the statutory time limits.

On or about September 29,2022, Plaintiff submitted a second QWR, attached as Exhibit B, again

requesting corrections to servicing errors, including unexplained late fees and misapplied

payments.

2

Defendant again failed to comply. Additional QWRs were sent on April 13,2023 and February 15,2024, attached respectively as Exhibit C and Exhibit D*

Defendant failed to acknowledge the QWR within five business days and did not provide a meaningful response within thirty business days, in violation of RESPA.

Defendant's failure to respond caused confusion, legal expenses, and other actual damages, including potential wrongful default status, inaccurate credit reporting, and emotional distress.

Additionally, Defendant provided false, misleading, or incomplete statements regarding the loan balance, escrow account, late fees, and default status.

Defendant misapplied payments, charged unsubstantiated fees, and failed to provide accurate periodic accountings despite repeated requests.

Plaintiff relied on these false representations and suffered actual harm as a result.

## IV.    CLAIM ONE: VIOLATION OF RESPA (12 US.C § 2605)

Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

Defendant failed to comply with 12 U.S.C. § 2605(e)(1)(A) and (e)(2) by:

a.    Failing to acknowledge receipt of the QWR within five business days;

b.    Failing to respond with substantive information within thirty business days;

c.    Failing to correct errors or explain their position.

d.    Engaging in practices that resulted in actual damages to Plaintiff.

As a result. Plaintiff is entitled to actual damages, statutory damages up to $2,000, and attorneys' fees under 12 U.S.C. § 2605(f).

## V.    CLAIM TWO: VIOLATION OF TEXAS DTPA

Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

Plaintiff is a "consumer" under the Texas DTPA, as Plaintiff sought and acquired mortgage servicing for personal, family, or household purposes.

Defendant engaged in false, misleading, and deceptive acts and practices in violation of Tex. Bus. & Com. Code § 17.46(b), including:

a.   Misrepresenting the loan balance, payment due, and default status;

b.   Misapplying payments and charging unauthorized fees;

c.   Failing to provide accurate escrow and payment history information;

d.   Representing services had characteristics or benefits which they did not have.

Plaintiff relied on these representations to their detriment and suffered financial and emotional harm.

Defendant's conduct was knowing and intentional, entitling Plaintiff to treble damages under Tex. Bus. & Com, Code § 17.50(b)(1).

## VI. LEGAL CLAIMS

Defendant's conduct violates 12 U.S.C. § 2605(e) by failing to timely and adequately respond to Plaintiff's Qualified Written Requests (QWRs), This is a violation of the Real Estate Settlement Procedures Act (RESPA), which provides that servicers must acknowledge a QWR within 5 business days and respond substantively within 30 business days. *See Catalan v. GMAC Mortg. Corp.,* 629 E3d 676 (7th Cir 2011); *Renfroe v. Nationstar Mortg, LLC,* 822 F3d 1241 (11th Cir. 2016); *In re Holland,* 374 B.R. 409 (Bankr. D. Mass. 2007).

Defendant's actions also violate the Texas Deceptive Trade Practices Act (DTPA). Mortgage servicers qualify as service providers under Texas law when they engage in misrepresentations or deceptive servicing practices. Plaintiff alleges that Defendant engaged in false, misleading,

4

and deceptive acts or practices by misapplying payments, failing to credit accounts accurately, and providing false information about the loan status. *See La Sara Grain Co. v. First National Bank of Mercedes*, 673 S.W.2d 558 (Tex. 1984); *Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535 (Tex. 1981); *Head v. US. Bank National Ass'n*, No. H-134317, 2014 WL 4165377 (S.D. Tex. Aug, 19, 2014).

## VII. AMENDED RESPA COMPLAINT

Debtor/Plaintiff previously submitted complaint under the Real Estate Settlement Procedures Act (RESPA), in accordance with 12 U.S.C. § 2601 et seq., and its implementing regulation, Regulation X (12 CFR Part 1024). Debtor/Plaintiff submit this amendment to address serious concerns regarding escrow mismanagement, improper force-placement of insurance, and unauthorized interference with my contractual right to directly manage my property insurance and tax payments.

## VIII. FACTUAL BACKGROUND

I, Charles Mosely, am the borrower of the mortgage secured by the Deed of Trust recorded for the property located at 3005 Nita Street, Houston, TX 77051. Under Section 3 of the Deed of Trust, the lender had the option to waive the requirement for an escrow account, allowing me to directly pay property taxes and insurance premiums. I maintained valid homeowners insurance through Aventus Insurance Company without interruption.

## IX. INSURANCE POLICY HISTORY

The following insurance policies were active and in force without lapse during the relevant period:

- Aventus Insurance Company Policy #WRA 000048057-5: 10/03/2019 to 10/03/2025 (in force,

no claims). *See* Exhibit E

- Aventus Insurance Company Policy #WRA 000048057-4: 10/03/2019 to 10/03/2024 (in force,

no claims). *See* Exhibit F

- Southern Vanguard Insurance Policy #TXHPI 5001760-02: 05/29/2019 to 05/29/2020

(rescission of nonrenewal). *See* Exhibit G

- Texas FAIR Plan Policies: Continuous coverage from 2012–2015 with one hail claim in 2013

($3,349.39). *See* Exhibit H

- DEED OF TRUST: *See* Exhibit I

## X. ALLEGED RESPA VIOLATIONS

1. Violation of 12 CFR § 1024.37 — The servicer failed to cancel force-placed insurance within 15

days after I provided sufficient evidence of coverage.

2. Violation of 12 CFR § 1024.17 — Mismanagement of escrow funds, including false claims of

shortage, unlawful increases in monthly payments, and the force-placement of unnecessary and

more expensive insurance.

3. Breach of contract — The Deed of Trust allows me to pay insurance directly when escrow is

waived. Servicer interference in this regard was unauthorized and unjustified.

## XI. SUPPORTING CASE LAW AND REGULATORY AUTHORITY

1. 12 CFR § 1024.17 — Escrow account handling and disclosure.

2. 12 CFR § 1024.37 — Regulation of force-placed insurance and evidence of borrower coverage.

3. Lipscomb v. Deutsche Bank Nat'l Tr. Co., No. 1:17-CV-02569 (N.D. Ill. Mar. 7, 2019).

4. Beadle v. Haughey, 2004 WL 1941349 (D.N.H. Aug. 30, 2004).

5. 12 U.S.C. § 2605(f) – Statutory damages and enforcement provisions under RESPA.

## XII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against Defendant and award;

As to the RESPA claim:

1,     Actual damages pursuant to 12 U.S.C. § 2605(f)(1);

2,     Statutory damages up to $2,000 per incident, for pattern and practice violations;

3,     Reasonable attorneys' fees and costs; As to the DTPA claim:

4,     Actual damages under Tex. Bus. & Com. Code § 17.50(b);

5,     Treble damages for knowing or intentional conduct;

6,     Attorneys' fees under § 17.50(d); 7P Injunctive and/or equitable relief as  necessary to correct Defendants practices; And:

8.     Pre- and post-judgment interest; and

9.     All other relief, legal or equitable, to which Plaintiff may be entitled.

10.     Immediate cancellation of any force-placed insurance policies.

11.     Reimbursement of any premiums or charges applied for unnecessary insurance.

12.     Correction of escrow calculations and restoration of borrower's rights to pay directly.

13.     Statutory damages under RESPA.

14.     Declaratory judgment affirming my right to manage taxes and insurance without servicer interference.

15.     Grant such other and further relief, at law or in equity, to which Plaintiff shows himself justly entitled.

Respectfully submitted,

/s/Charles Mosely
Charles Mosely,
3005 Nita Street
832-244-0055
IN PRO PER/Debtor

<div align="center">

**CERTIFICATE OF SERVICE**

</div>

CORPORATION SERVICE COMPANY
1201 Hays Street
Tallahassee, FL. 32301

/s/Charles Mosely
Charles Mosely
3005 Nita Street
832-244-0055
IN PRO PER/Debtor

**DECLARATION**

I, Charles Mosely, declare under penalty of perjury under the laws of the United States of

America that the facts stated in the foregoing Amended RESPA Complaint and all attached

Exhibits are true and correct to the best of my knowledge.

Executed on June 3, 2025

_____

Charles Mosely

<div align="center">

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

</div>

In re:

<div align="center">8</div>

| | | |
|---|---|---|
| **DEBTOR,** | § | |
| | § | |
| **Charles Mosely** | § | |
| **PLAINTIFF,** | § | **CHAPTER 13** |
| | § | |
| | § | |
| **SELENE FINANCE LP** | § | |
| **DEFENDANT,** | § | **Adv. Proc. No._____** |

## DEBTOR'S FIRST AMENDED ADVERSARY COMPLAINT FOR

## RESPA  AND DTPA VIOLATIONS

### ORDER

Upon review of the Amended Complaint filed by Debtor Charles Mosely asserting violations of the Real Estate Settlement Procedures Act by the mortgage servicer, and after due consideration of the pleadings and evidence submitted, it is hereby ORDERED that:

The mortgage servicer shall immediately cancel any force-placed insurance on the subject property.

The mortgage servicer shall refund all premiums and charges related to said insurance.

The escrow account shall be reviewed and recalculated in compliance with 12 CFR § 1024.17.

The servicer shall accept borrower-provided insurance unless properly disapproved as outlined in the Deed of Trust.

The Court retains jurisdiction to enforce this Order.

Plaintiff is awarded actual damages in the amount of $_____.

Plaintiff is awarded statutory damages pursuant to 12 U.S.C. § 2605(f) in the amount of $_____.

Plaintiff is awarded treble damages under the DTPA in the amount of $_____.

Plaintiff is entitled to recover reasonable attorney's fees and costs, which shall be determined upon separate motion.

All other relief not expressly granted is denied.

SIGNED this ___ day of _____, 20.

_____

UNITED STATES BANKRUPTCY JUDGE

# EXHIBITS:

Exhibit A - R.E.S.P.A. QUALIFIED WRITTEN REQUEST - October 22,2021

Exhibit B - R.E.S.P.A. QUALIFIED WRITTEN REQUEST - September 29, 2022

Exhibit C - R.E.S.P.A. QUALIFIED WRITTEN REQUEST – April 13, 2023

Exhibit D - R.E.S.P.A. QUALIFIED WRITTEN REQUEST – February 15, 2024

Exhibit E – Aventus Insurance Letter (Policy #WRA 000048057-5)

Exhibit F – Aventus Insurance Letter (Policy #WRA 000048057-4)

Exhibit G – Southern Vanguard Recission Letter (Policy #TXHPI 5001760-02)

Exhibit H – Texas FAIR Plan Letters (2012–2015 Coverage)

Exhibit I – DEED OF TRUST

EXHIBIT A

Case 25-03365   Document 2   Filed in TXSB on 06/06/25   Page 12 of 67
Case 25-31187   Document 38   Filed in TXSB on 05/15/25   Page 10 of 30
Case 4:24-cv-02236   Document 1-5   Filed on 06/12/24 in TXSD   Page 33 of 54

Charles Mosely
3005 Nita
Houston, Texas 77051

October 22, 2021

CMR:7020064000060931486

SELENE FINANCE
9990 Richmond, Suite 400 South
Houston, Texas 77042-4546

Account Number # 2004963935

**R.E.S.P.A. QUALIFIED WRITTEN REQUEST**

Dear Sir or Madam:

Please treat this letter as a "qualified written request" under the Federal Servicer Act, which is a part of the Real Estate Settlement Procedures Act, 12 U.S.C. 2605(e).

Specifically, I am disputing the amount that you claim is owed according to the Monthly Billing Statement and request that you send me information about the fees, costs, and escrow accounting on our loan. a) the identity of a true secured lender/creditor, and b) the existence of debt, and c) your authority and capacity to collect on behalf of the alleged lender/creditor. Because of extensive criminal activity and fraud in this arena, I require proof of the chain of secured ownership from the original alleged lender/creditor to the alleged current lender/creditor. Further, I require proof that you are the entity that has been contracted to work on behalf of the alleged lender/creditor.

Pursuant to "Subtitle E Mortgage Servicing" of the Dodd-Frank Wall Street Reform and Consumer Protection Act and pursuant to 12 U.S.C. Section 2605(e)(1)(A) and Reg. X Section 3500.21(e)(1), please provide:

1. A full, double-sided, certified "true and accurate" copy of the original promissory note and security instrument and all assignments of the security instrument.

2. Full name, address and, telephone number of the actual entity that funded the transaction.

3. Full name of Trust where the Note Number is trading or has traded, and the identifying Series of Certificates.
   (Note: If the note number is being traded in a Fannie Mae Trust or Freddie Mac Trust, please provide all information to identify the Trust (i.e. Fannie Mae Pool Number, CUSIP Number, REMIC or SMBS Trust Number and Trust Class/Tranche).

4. Full name, address, and telephone number of the Trustee.

Case 25-03365   Document 2   Filed in TXSB on 06/06/25   Page 13 of 67
Case 25-31187   Document 38   Filed in TXSB on 05/15/25   Page 11 of 30
Case 4:24-cv-02236   Document 1-5   Filed on 06/12/24 in TXSD   Page 34 of 54

5. Full name, address, and telephone number of the **Custodian of my original Promissory Note**, including the name, address and, telephone number of any trustee or other fiduciary. This request is being made pursuant to Section 1641(f)(2) of the Truth In Lending Act.

6. Full name, address, and telephone number of the **Custodian of my original Security Instrument**, including the name, address and, telephone number of any trustee or other fiduciary. This request is being made pursuant to Section 1641(f)(2) of the Truth In Lending Act.

7. **A physical location (address) of the original promissory note, original security instrument, and all assignments** of the security instrument, <u>and</u> a **contact name and phone number of someone who can arrange for inspection** of said documents.

8. If it is alleged that the original promissory note was lost, how was it lost?

9. When was the original promissory note last seen?

10. Full name, address, and telephone number of the last person who saw the original promissory note.

11. In whose possession was the original promissory note when it was allegedly lost?

12. Full name, address and, telephone number of any person who has direct personal information on the location of the original promissory note and the timing and method of loss.

13. Full name, address and, telephone number of any master servicers, servicers, sub-servicers, contingency servicers, back-up servicers or, special servicers for this account.

14. All data, information, notations, text, figures and, information contained in your mortgage servicing and accounting computer systems including, but not limited to Alltel's CPI system, any system by Alltell or any other similar mortgage servicing software used by you, any Servicers, or sub-servicer of my mortgage account from the inception of my loan to the date written above.

15. All descriptions and legends of all Codes used in your mortgage servicing and accounting system so that the examiners, auditors and, experts retained to audit and review my mortgage account may properly conduct their work.

16. All purchase and sale of mortgage agreements, sale or transfer of servicing rights o,r other similar agreement related to any assignment, purchase or, sale of my mortgage loan or servicing rights by you, any broker, affiliate company, parent company, servicers, bank, government-sponsored enterprise, sub-servicers, mortgage broker, mortgage banker or any holder of any right related to my mortgage, promissory note and, deed of trust from the inception of my loan to the present date.

Case 25-03365   Document 2   Filed in TXSB on 06/06/25   Page 14 of 67
Case 25-31187   Document 38   Filed in TXSB on 05/15/25   Page 12 of 30
Case 4:24-cv-02236   Document 1-5   Filed on 06/12/24 in TXSD   Page 35 of 54

17. All prospectus' related to the sale or transfer of my note, deed of trust, mortgage and servicing rights or other similar agreement related to any assignment, purchase or, sale of my mortgage loan or servicing rights by you, any broker, affiliate company, parent company, servicers, bank, government-sponsored enterprise, sub-servicers, mortgage broker, mortgage banker or any holder of any right related to my mortgage, promissory note and deed of trust from the inception of my loan to the present date.

18. All assignments, transfers, allonges, or other documents evidencing a transfer, sale or assignment of my mortgage, deed of trust, promissory note or other documents that secures payment by me to my obligation in this account from the inception of my loan to the present date.

19. Has each sale, transfer or assignment of my mortgage or promissory note or any other instrument I executed to secure my debt been recorded in the county property records in the county and state in which my property is located from the inception of my loan to the present date? Yes or No?

20. All deeds in lieu, modifications to my mortgage, promissory note or deed of trust from the inception of my loan to the present date.

21. The electronic MERS number assigned to this account if this is a MERS Designated Account.22. **Proof of true sale of the note** from alleged Lender to investors, by showing: Wire transfer document(s), and/or
Signed purchase and sale agreement(s),
Bank statements or similar documentation.

23. The MERS Milestone Report, if the note number and security instrument was tracked by Mortgage Electronic Registration Systems. I want to see the audit trail of the alleged transfer in ownership and alleged transfer in security interest.

24. A complete audit history from alleged loan origination, showing the dates payments were applied, and to what internal accounts (i.e. principal, interest, suspense, escrow, etc.) payments were applied.25.  A complete and itemized statement of all advances or charges against this account.

26. A complete and itemized statement of the escrow for this account, if any, from the date of the note origination to the date of your response to this letter.

27. All letters, statements and documents sent to me by your company.

28. All letters, statements and documents sent to me by agents, attorneys or representatives of your company.

29. All letters, statements and documents sent to me by previous servicers, sub-servicers or others in your loan file or in your control or possession or in the control or possession of

Case 25-03365 Document 2 Filed in TXSB on 06/06/25 Page 15 of 67
Case 25-31187 Document 38 Filed in TXSB on 05/15/25 Page 13 of 30
Case 4:24-cv-02236 Document 1-5 Filed on 06/12/24 in TXSD Page 36 of 54

any affiliate, parent company, agent, sub-servicer, servicer, attorney or other representative of your company.

30. All electronic transfers, assignments, sales of my note, mortgage, deed of trust or other security instrument.

31. Have you purchased and charged to the account any Force-Placed Insurance?

32. A complete and itemized statement from the date of the note origination to the date of your response to this letter of the amounts charged for any forced-placed insurance, the date of the charge, the name of the insurance company, the relation of the insurance company to you or a related company, the amount of commission you received for each force-placed insurance event, and an itemized statement of any other expenses related thereto.

33. A complete and itemized statement from the date of the note origination to the date of your response to this letter of any suspense account entries and/or any corporate advance entries related in any way to this account.

34. A complete and itemized statement from the date of the loan to the date of your response to this letter of any property inspection fees, property preservation fees, broker opinion fees, appraisal fees, bankruptcy monitoring fees, or other similar fees or expenses related in any way to this loan.

35. A statement/provision under the security instrument and/or note that authorizes charging any such fee against the account.

36. Copies of all property inspection reports and appraisals, broker price opinions, and associated bills, invoices, and checks or wire transfers in payment thereof.

37. All agreements, contracts and understandings with vendors that have been paid for any charge on my account from the inception of my loan to the present date.

38. Complete copy of any transaction report(s) indicating any charges for any "add on products" sold to the debtors in connection with this account from the date of the note origination to the date of your response to this letter.

39. Complete and itemized statement of any late charges added to this account from the date of the note origination to the date of your response to this letter.

40. Complete and itemized statement of any fees incurred to modify, extend, or amend the loan or to defer any payment or payments due under the terms of the loan, from the date of the note origination to the date of your response to this letter.

41. In a spreadsheet form or in letter form in a columnar format, please detail for me each and every credit on my account and the date such credit was posted to my account as well as the date any credit was received.

Case 25-03365   Document 2   Filed in TXSB on 06/06/25   Page 16 of 67
Case 25-31187   Document 38   Filed in TXSB on 05/15/25   Page 14 of 30
Case 4:24-cv-02236   Document 1-5   Filed on 06/12/24 in TXSD   Page 37 of 54

42. In a spreadsheet form or in letter form in a columnar format, please detail for me each and every debit on my account and the date such credit was posted to my account as well as the date any debit was received.

43. For each debit or credit listed, provide the definition for each corresponding transaction code you utilize.

44. For each transaction code, provide the master transaction code list used by you or previous servicers.

45. Complete, itemized statement of the current amount needed to pay-off the alleged "loan" in full.

46. Verification of any notification provided to me of a change in servicer.

47. Have attorney fees or legal fees ever been assessed to my account from the inception of my loan to the present date?

48. If attorney fees or legal fees have been assessed to my account, detail each separate assessment from the inception of my loan to the present date to include the date of such assessment to my account.

49. Have attorney fees or legal fees ever been collected from my account from the inception of my loan to the present date?

50. Detail each separate collection of attorney fees from my account from the inception of my loan to the present date and provide the date of such collection from my account.

51. Provide the name and address of each attorney or law firm that has been paid any fees or expenses related to my account from the inception of my loan to the present date.

52. Detail and list each separate attorney fee assessed to my account and for which corresponding payment period or month such late fee was assessed from the inception of my loan to present date.

53. Detail and list any adjustments in attorney fees or legal fees assessed and on what date such adjustment was made and the reasons for such adjustment.

54. Has interest been charged on any attorney fee or legal fee assessed or charged to my account?

55. Is interest allowed to be assessed or charged on attorney fees or legal fees charged or assessed to my account?

56. How much in total attorney fees or legal fees have been assessed to my account from the inception of my loan until present date?

Case 25-03365   Document 2   Filed in TXSB on 06/06/25   Page 17 of 67
Case 25-31187   Document 38   Filed in TXSB on 05/15/25   Page 15 of 30
nt 1-5   Filed on 06/12/24 in TXSD   Page 40 of 54

U.S. Postal Service

**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at www.usps.com®.

**OFFICIAL USE**

| | |
|---|---|
| Certified Mail Fee $3.75 | 0039 |
| | 01 |
| Extra Services & Fees (check box, add fee as appropriate) | |
| ☐ Return Receipt (hardcopy) $0.00 | |
| ☐ Return Receipt (electronic) $0.00 | |
| ☐ Certified Mail Restricted Delivery $0.00 | |
| ☐ Adult Signature Required $0.00 | |
| ☐ Adult Signature Restricted Delivery $ | |
| Postage $0.78 | |
| Total Postage and Fees $4.53 | |

Sent To SELENE FINANCE

Street and Apt. No., or PO Box No. 9990 RICHMOND, STE. 400 South

City, State, ZIP+4 HOUSTON, TX 77099 - 4546

PS Form 3800, Apr 2015   See Reverse for Instructions

# EXHIBIT B

Case 25-03365   Document 2   Filed in TXSB on 06/06/25   Page 19 of 67
Case 25-31187   Document 38   Filed in TXSB on 05/15/25   Page 17 of 30
Case 4:24-cv-02236   Document 1-5   Filed on 06/12/24 in TXSD   Page 46 of 54

September 29, 2022


Selene Finance
9900 Richmond Avenue
Suite 400 South
Houston, Texas 77042

**Qualified Written Request**

CMR: # 70210350000097500210

**In the Matter of:**
Charles Mosely
3005 Nita Street
Houston, Texas 77051
Account number:  2004963935


Dear Sir or Madam:

Please treat this letter as a "qualified written request" under Section 6(e) of the Real Estate Settlement Procedures Act, 12 U.S.C. 2605(e). This request is made on behalf of the above-named debtor, based on the pending dispute about the proper application of payments from the debtors to interest, principal, escrow advances, and expenses (in that order of priority as provided for in the loan instruments); about your use of suspense accounts in connection with your receipt of the debtors' payments; about your use of legacy late charges with respect to mortgage payments; about your use of automatically triggered property inspections and broker price opinion charges and fees; and about legal fees and expenses that have been attached to this account in the form of corporate advances. Specifically, I am requesting the following information:

1.      A complete and original life of loan transaction history to the date of your response to this letter prepared by the Servicer from its own records using its own system and default servicing personnel. Also, please identify the mortgage servicing software you use in connection with this loan (MSP, LSAMS, etc).

2.      A copy of your Key Loan Transaction history, bankruptcy work form, XLS spreadsheet, or any other manually-prepared spreadsheet or record of all accounts associated with this mortgage loan (this would include both recoverable and non-recoverable and restricted and non-restricted accounts).

3.      A full and complete plain-English definitional dictionary of all transaction codes and other similar terms used in the records requested above or any of the other documents or records requested or referred to herein.

4.      If this is a MERS or MOM loan, please attach a copy of all MERS Milestone Reports.

Case 25-03365   Document 2   Filed in TXSB on 06/06/25   Page 20 of 67
Case 25-31187   Document 38   Filed in TXSB on 05/15/25   Page 18 of 30
Case 4:24-cv-02236   Document 1-5   Filed on 06/12/24 in TXSD   Page 47 of 54

5. Full name, address, and telephone number of the **Custodian of my original Promissory Note**, including the name, address and, telephone number of any trustee or other fiduciary. This request is being made pursuant to Section 1641(f)(2) of the Truth In Lending Act.

6. Full name, address, and telephone number of the **Custodian of my original Security Instrument**, including the name, address and, telephone number of any trustee or other fiduciary. This request is being made pursuant to Section 1641(f)(2) of the Truth In Lending Act.

7. A **physical location (address) of the original promissory note, original security instrument, and all assignments of the security instrument, <u>and</u> a contact name and phone number of someone who can arrange for inspection of said documents.**

8. If it is alleged that the original promissory note was lost, how was it lost?

9. When was the original promissory note last seen?

10. Full name, address, and telephone number of the last person who saw the original promissory note.

11. In whose possession was the original promissory note when it was allegedly lost?

12. Full name, address and, telephone number of any person who has direct personal information on the location of the original promissory note and the timing and method of loss.

13. Full name, address and, telephone number of any master servicers, servicers, sub-servicers, contingency servicers, back-up servicers or, special servicers for this account.

14. All data, information, notations, text, figures and, information contained in your mortgage servicing and accounting computer systems including, but not limited to Alltel's CPI system, any system by Alltell or any other similar mortgage servicing software used by you, any Servicers, or sub-servicer of my mortgage account from the inception of my loan to the date written above.

15. All descriptions and legends of all Codes used in your mortgage servicing and accounting system so that the examiners, auditors and, experts retained to audit and review my mortgage account may properly conduct their work.

16. All purchase and sale of mortgage agreements, sale or transfer of servicing rights o,r other similar agreement related to any assignment, purchase or, sale of my mortgage loan or servicing rights by you, any broker, affiliate company, parent company, servicers, bank, government-sponsored enterprise, sub-servicers, mortgage broker, mortgage banker or any holder of any right related to my mortgage, promissory note and, deed of trust from the inception of my loan to the present date.

Case 25-03365   Document 2   Filed in TXSB on 06/06/25   Page 21 of 67
Case 25-31187   Document 38   Filed in TXSB on 05/15/25   Page 19 of 30
Case 4:24-cv-02236   Document 1-5   Filed on 06/12/24 in TXSD   Page 38 of 54

57. How much in total attorney fees have been collected on my account from the inception of my loan until present date?

58. Identify in writing the provision, paragraph, section or sentence of any note, mortgage, deed of trust or any agreement I signed authorized the assessment or collection of attorney fees.

59. Have you reported the collection of late fees or late charges on my account as interest in any statement to me or to the IRS?

60. Has any previous servicer or sub-servicer of my mortgage reported the collection of late fees or late charges on my account as interest in any statement to me or to the IRS?

61. Do you consider the payment of late fees or late charges as liquidated damages to you for not receiving my payment on time?

62. Are late fees considered interest?

63. Detail in writing what expenses and damages you incurred or undertook for any late payment,

64. Were any of these expenses or damages related to any payment I made that was late charged or assessed to my account in any other way?

65. If yes, describe what expenses or charges were charged or assessed to my account.

66. Identify in writing the provision, paragraph, section or sentence of any note, mortgage, deed of trust or any agreement I signed that authorized the assessment or collection of late fees.

67. Detail and list each separate late fee assessed to my account and for which corresponding payment period or month such late fee was assessed from the inception of my loan to present date.

68. Detail and list any adjustments in late fees collected and on what date such adjustment was made and the reasons for such adjustment.

69. Has interest been charged on any late fee assessed or charged to my account?

70. Is interest allowed to be assessed or charged on late fees charged or assessed to my account?

71. How much in total late charges have been assessed to my account from the inception of my loan until present date?

Case 25-03365   Document 2   Filed in TXSB on 06/06/25   Page 22 of 67
Case 25-31187   Document 38   Filed in TXSB on 05/15/25   Page 20 of 30
Case 4:24-cv-02236   Document 1-5   Filed on 06/12/24 in TXSD   Page 39 of 54

72. Provide the exact months or payment dates you and other previous servicers of my account claim I have been late with a payment from the inception of my loan to the present date.

73. How much in total late charges have been collected on my account from the inception of my loan until present date?

74. Identify the provision, paragraph, section or sentence of any note, mortgage, deed of trust or any agreement I signed that authorized the assessment or collection of property inspection fees.

75. Have you labeled in any record or document a property inspection as a misc. advance?

76. Have you labeled in any record or document a property inspection as a legal fee or attorney fee?

77. Has interest been charged on any inspection fees assessed or charged to my account?

78. If yes, when and how much was charged?

79. Is interest allowed to be assessed or charged on inspection fees charged or assessed to my account?

80. How much in total inspection fees have been assessed to my account from the inception of my loan until present date?

81. Identify where the originals of my entire loan file are currently located and how they are being stored, kept and protected?

82. Has my mortgage loan been made a part of any mortgage pool since the inception of my loan?

**You should be advised that within FIVE (5) DAYS you must send us a letter stating that you received this letter. After that time you have THIRTY (30) DAYS to fully respond as per the time frame mandated by Congress, in "Subtitle 'E' Mortgage Servicing" of the "Dodd-Frank Wall Street Reform and Consumer Protection Act and pursuant to 12 U.S.C. Section 2605(e)(1)(A) and Reg. X Section 3500.21(e)(1).**

*TRUTH-IN-LENDING ACT § 131(f)(2)*

Pursuant to *15 U.S.C. § 1641 (f)*:

Please provide the name, address and telephone number of the owner(s) of the mortgage and the master servicer of the mortgage.

Case 25-03365   Document 2   Filed in TXSB on 06/06/25   Page 23 of 67
Case 25-31187   Document 38   Filed in TXSB on 05/15/25   Page 21 of 30
-5   Filed on 06/12/24 in TXSD   Page 48 of 54



U.S. Postal Service
**CERTIFIED MAIL® RECEIPT**
Domestic Mail Only

For delivery information visit our website at www.usps.com

**OFFICIAL USE**

Certified Mail Fee   $4.00

Extra Services & Fees (check box, add fee as appropriate)
☐ Return Receipt (hardcopy)       $_____
☐ Return Receipt (electronic)     $_____
☐ Certified Mail Restricted Delivery $_____
☐ Adult Signature Required        $_____
☐ Adult Signature Restricted Delivery $_____

Postage   $0.60

Total Postage and Fees   $4.60

Sent To  Selene Finance
Street and Apt. No., or PO Box No.  9700 Richmond
City, State, ZIP+4  Houston, TX 77042

PS Form 3800, April 2015

```
Tracking #:
   70210350000097500210
Total                              $4.60

Media Mail        1                $3.49
   Humble, TX 77346
   Weight: 0 lb 15.16 oz
   Estimated Delivery Date
      Sat 10/01/2022
   Tracking #:
      9549 0117 7517 2272        25

(Forever) Tulips   1    $0.60      $0.60

Grand Total:                       $8.69

Credit Card Remit                  $8.69
   Card Name: MasterCard
   Account #: XXXXXXXXXXXX5592
   Approval #: 34C589
   Transaction #: 775
   AID: A0000000042203
   AL: US Debit               Chip
   PIN: Not Required
```

Text your tracking number to 28777 (2USPS)
to get the latest status. Standard Message
and Data rates may apply. You may also
visit www.usps.com USPS Tracking or call
1-800-222-1811.

In a hurry? Self-service kiosks offer
quick and easy check-out. Any Retail
Associate can show you how.

Preview your Mail
Track your Packages
Sign up for FREE @
https://informeddelivery.usps.com

All sales final on stamps and postage.
Refunds for guaranteed services only.
Thank you for your business.

Tell us about your experience.
Go to: https://postalexperience.com/Pos
  scan this code with your mobile device.

or call 1-800-410-7420.

# EXHIBIT C

Case 25-03365   Document 2   Filed in TXSB on 06/06/25   Page 25 of 67
Case 25-31187   Document 38   Filed in TXSB on 05/15/25   Page 23 of 30
Case 4:24-cv-02236   Document 1-5   Filed on 06/12/24 in TXSD   Page 42 of 54

April 13, 2023


Selene Finance LP
ATTN: Customer Service Research
P. O. Box 8279
Philadelphia, PA. 19101-8279

**Qualified Written Request**

CMR: # 70200640000060931561

**In the Matter of:**


Charles Mosely
3005 Nita Street
Houston, Texas 77051
Account number: 2004963935


Dear Sir or Madam:

Please treat this letter as a "qualified written request" under Section 6(e) of the Real Estate Settlement Procedures Act, 12 U.S.C. 2605(e). This request is made on behalf of the above-named debtor, based on the pending dispute about the proper application of payments from the debtors to interest, principal, escrow advances, and expenses (in that order of priority as provided for in the loan instruments); about your use of suspense accounts in connection with your receipt of the debtors' payments; about your use of legacy late charges with respect to mortgage payments; about your use of automatically triggered property inspections and broker price opinion charges and fees; and about legal fees and expenses that have been attached to this account in the form of corporate advances. Specifically, I am requesting the following information:

1.     A complete and original life of loan transaction history to the date of your response to this letter prepared by the Servicer from its own records using its own system and default servicing personnel. Also, please identify the mortgage servicing software you use in connection with this loan (MSP, LSAMS, etc).

2.     A copy of your Key Loan Transaction history, bankruptcy work form, XLS spreadsheet, or any other manually-prepared spreadsheet or record of all accounts associated with this mortgage loan (this would include both recoverable and non-recoverable and restricted and non-restricted accounts).

3.     A full and complete plain-English definitional dictionary of all transaction codes and other similar terms used in the records requested above or any of the other documents or records requested or referred to herein.

4.     If this is a MERS or MOM loan, please attach a copy of all MERS Milestone Reports.

Case 25-03365   Document 2   Filed in TXSB on 06/06/25   Page 26 of 67
Case 25-31187   Document 38   Filed in TXSB on 05/15/25   Page 24 of 30
Case 4:24-cv-02236   Document 1-5   Filed on 06/12/24 in TXSD   Page 43 of 54

5.      If this is a MERS or MOM loan, please attach a copy of all MIN Reports.

6.      Please identify the full name, address and telephone number of the current holder of
the original mortgage note including the name, address and phone number of any Trustee
under the Trust or other fiduciary. This request is being made pursuant to Section 1641(f)(2) of
the Truth In Lending Act, which require the servicer to identify the holder of the debt. This
request is also being made pursuant to the amendments to RESPA under the Dodd-Frank Act.

7.      Copies of all collection notes, collection record, communication files or any other form of
recorded data with respect to any communications between you and the debtor.

8.      An itemized statement of the full amount needed to reinstate the mortgage as of the date
of your response along with an itemized pay-off statement.

9.      Copies of all written or recorded communications between you and any non-lawyer third
parties regarding this mortgage (including but not limited to LPS Desktop communiqués, New
Trak communications, New Invoice transmittals, New Image transmittals, electronic
communications by email or otherwise, collection note, and any other form of written or
electronic document related to the servicing of or ownership of this loan).

10.     All P-309 screen shots of the history all of the accounts (principal, interest, escrow, late
charges, legal fees, property inspection fees, broker price opinion fees, statutory expense fees,
miscellaneous fees, corporate advance fees, etc.) associated with this loan.

11.     Please produce a full Life of Loan transaction history generated from the AS400 system,
including Loan History Inquiry, Fees Due Inquiry, Monthly Statement Request and History,
Impound/Escrow Account Review, Servicing activities History (Combined View), Bankruptcy
Department Screens if applicable, Bankruptcy Account Follow-Up if applicable, 1st mortgage
Account Status, Field Service Inspection Selection, Fees Due Listing, all Comment Logs from
BK, FC, Customer Service Departments, and all fees and costs and escrow accounting details.

12.     Please produce copies of all invoices from the servicer for all third-party vendors
including proof of payment.

You Should be advised that you must acknowledge receipt of this qualified written request
within five (5) business days, pursuant to 12 U.S.C. Section 2605(e) (1) (A) as amended
effective July 16, 2010, by the Dodd-Frank Finance Reform Act and Reg. X Section
3500.21(e) (1).

You should also be advised that the debtor herein will seek the recovery of damages, costs, and
reasonable legal fees for each failure to comply with the question and requests herein. The debtor
also reserve the right to seek statutory damages for each violation of any part of Section 2605 of
Title 12 of the United States Codes in the amount of $2,000.00 for each violation.

*Also note that as a mortgage servicers you required to fully answer all these questions within
10 days from the date you receive this letter, this is  my second request.

Sincerely,

Case 25-03365   Document 2   Filed in TXSB on 06/06/25   Page 27 of 67
Case 25-31187   Document 38   Filed in TXSB on 05/15/25   Page 25 of 30
nt 1-5   Filed on 06/12/24 in TXSD   Page 44 of 54

U.S. Postal Service
**CERTIFIED MAIL® RECEIPT**
Domestic Mail Only

For delivery information, visit our website at www.usps.com

OFFICIAL USE

Certified Mail Fee     $4.15                    0047
                                                 99
$                        $3.35
Extra Services & Fees (check box, add fee as appropriate)
☐ Return Receipt (hardcopy)      $ $0.00
☐ Return Receipt (electronic)    $ $0.00        Postmark
☐ Certified Mail Restricted Delivery $ $0.00     Here
☐ Adult Signature Required       $ $0.00
☐ Adult Signature Restricted Delivery $ $0.00

Postage      $0.63
$
Total Postage and Fees
$            $8.13                04/17/2023

Sent To   SELENE FINANCe
Street and Apt. No., or PO Box No.  BOX 8279
City, State, ZIP+4®   PhiLaDeLPhia, PA

PS Form 3800, April 2015 PSN 7530-02-000-9047   See Reverse for Instructions

Tracking #:
      9206... 1981
Return Receipt
      Tracking #:
      9590 9402 7600 2214 ... ...
Total                          $8.13

Gra d Total:                   $8.13

Debit Ca  d  mitted            $58.13
   Card      MasterCard
   Accou     XXXXXXXXXXXX1089
   Appro...    90320
   Transaction  131
   Receipt #: ...
   Debit Card Purchase: $8 13
   AID: A0000000042203
   AL: US Debit
   PIN: Verified
Cash Back

Text your tracking number to 28777 (2USPS)
to get the latest status. Standard Message
   and Data rates may apply. You may also
visit www.usps.com USPS Tracking or call
         1-800-222-1811.

         Preview your Mail
         Track your Packages
         Sign up for FREE @
  https://informeddelivery.usps.com

All sales final on stamps and  tags.
Refunds for guaranteed services  ly.
   Thank you for your business.

   Tell us about your
Go to  https://postal...
or ...  ...is code with your  ...



     all  800-410-7...

# EXHIBIT D

Case 25-03365   Document 2   Filed in TXSB on 06/06/25   Page 29 of 67
Case 25-31187   Document 38   Filed in TXSB on 05/15/25   Page 27 of 30
Case 4:24-cv-02236   Document 1-5   Filed on 06/12/24 in TXSD   Page 50 of 54

# NOTICE

**From:**
Charles Mosely
3005 Nita Street
Houston, Texas 77051
Hereinafter collectively referred to as "Claimant"

**To:**
Selene Finance LP
P. O. Box 8619
Philadelphia, PA 19101-8619
Hereinafter collectively referred to as RESPONDENT, you, your company

RE: Alleged account # 2004963935

Certified Mail # 70200640000060931585

02/15/24

### NOTICE OF DISPUTE;
### DEMAND FOR VALIDATION AND PROOF OF CLAIM

To Whom it May Concern

This letter is being sent to you in response to a computer generated, unsigned letter dated August 24, 2009 (DF793), letter received by Claimant from your offices. Be advised that your claim is disputed and validation and proof of claim of the disputed debt is requested in accordance with the Fair Debt Collection Practices Act, 15 USC § 1692 and as amended by adding the following new Title 8 USC § 802 et seq., and the Fair Credit Billing Act, 15 USC. § 1666 et seq. All of which work in conjunction with each other, including the Truth in Lending Act (TILA) 15 USC 1601 et seq. It is not now, nor has it ever been, my intention to avoid paying any obligation that is lawfully owed by the Claimant. In order to make arrangements to pay an obligation which may be lawfully owed, please document and verify the "debt" by complying, in good faith, with this request for validation and return it to me, within thirty (30) days of receipt of this letter.

This is NOT a request for "verification" or proof of Claimant mailing address, but a request for VALIDATION and PROOF OF CLAIM made pursuant to the above named Titles and Sections. I respectfully request that your offices provide Claimant with competent evidence as per the attached "Declaration and Proof of Claim" that I have any legal obligation to pay you the unsubstantiated alleged debt. Furthermore you shall cease all verbal communication. No phone calls to the Claimant.

At this time I will also inform you that if your offices have reported invalidated information to any of the 3 major Credit Bureaus, such as, Equifax, Experian and TransUnion prior to validation and proof of claim of the disputed debt, this action might constitute fraud under both Federal and State Laws. Due to this fact; if any negative mark is found on any of Claimant credit reports by your company or the company that you represent I will not hesitate in bringing legal action against you and your client for the following:

– Violation of the Fair Credit Reporting Act
– Violation of the Fair Debt Collection Practices Act
– Defamation of Character
– Violation of United States Code TITLE 18 PART 1 CHAPTER 63 § 1341 (Mail Fraud)

This debt is considered to be invalid until I receive proper validation and your offices provide Claimant with proof of claim of the disputed debt. Your offices have 30 days to produce the required documentation in accordance with FTC guidelines. During this validation period and proof of claim, if any action is taken which could be considered detrimental to any of Claimant credit reports, said action will be considered a "dishonor" and cause the self-executing contract portion of this notice to be implemented. This includes any listing any information to a credit reporting repository that could be inaccurate or invalidated.

If your offices fail to respond to this validation and proof of claim request within 30 days from the date of your receipt, all references to this account must be deleted and completely removed from Claimant credit file and a copy of such deletion request shall be sent to Claimant immediately.

### Title 8 USC § 809. Validation of debts   [15 USC 1692g]

(b) If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or any copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector.

*Debt Validation Proof of Claim  —<Your N. Here, Sr.>*

*1 of 3*

Case 25-03365 Document 2 Filed in TXSB on 06/06/25 Page 30 of 67
Case 25-31187 Document 38 Filed in TXSB on 05/15/25 Page 28 of 30
Case 4:24-cv-02236 Document 1-5 Filed on 06/12/24 in TXSD Page 51 of 54

BLACK'S LAW DICTIONARY:

VERIFICATION. Confirmation of correctness, truth, or authenticity, by affidavit, oath, or deposition.

### Counter Claim with Self-executing Contract

If Respondent, such as by commission, omission, and otherwise:

(a) Fails to provide VALIDATION and PROOF OF CLAIM within thirty (30) days;
(b) Makes a false representation of the character of the herein above-referenced alleged debt;
(c) Makes a false representation of the legal status of the herein above-referenced alleged debt;
(d) Makes any threat of action that cannot legally be taken, in violation of any applicable law, such as, the law codified at the *Fair Debt Collection Practices Act*,

will be construed to be Respondent's tacit acceptance of the terms and condition stated herein. In which case RESPONDENT agrees to:

(e) Voluntarily report this account to all credit bureaus as "paid as agreed;" and,
(f) Voluntarily waive all claims against Claimant, their Agent or Heirs with prejudice; and,
(g) The matter regarding the alleged debt is finally and totally settled; and,
(h) Voluntarily admits the Claimant is the depositor for this account, that Respondent risked none of their assets at any time regarding this account and that they failed to disclose these material facts to Claimant; and,
(i) Voluntarily report the date of last activity on this account is the date of this notice.

RESPONDENT also agrees to:

1. Voluntarily authorize Claimant to record a UCC-1 on RESPONDENT as debtor to secure the debt owed Claimant; and,
2. Voluntarily prove their claim as a RESPONDENT in possession of Claimant property in a involuntary bankruptcy proceeding process; and,
3. Voluntarily compensate Claimant for ALL costs and attorneys/consultant fees; and,
4. Resolve ALL claims by Claimant, against Respondent, et al, exclusively and finally through binding arbitration, if necessary, to enforce the above terms, conditions, fees, penalties and damages. Arbitration replaces the right to go to court except to confirm an arbitration award. The arbitration organization that is selected will apply its code or procedure in effect at the time the arbitration is filed, subject to this agreement. The arbitration will be conducted before a single arbitrator. The arbitrator's authority is limited solely to the Claims between Claimant and Respondent alone. The arbitration will not be consolidated with any other arbitration proceeding. If Claimant prevails in the arbitration of any Claim against Respondent, Respondent will reimburse Claimant for any fees Claimant paid to the arbitration organization in connection with the arbitration. Any decision rendered in such arbitration proceedings will be final and binding on the parties, and judgment may be entered in a court of competent jurisdiction. This arbitration provision applies to all Claims now in existence or that may arise in the future. The arbitration provision shall survive any voluntary payment of Claimant's claim against Respondent, in full, or any bankruptcy by Respondent.

This is a private communication and is intended to affect an out-of-court settlement of this matter. Conduct yourself accordingly. Should any provision on this agreement be found to not be enforceable by order of a court of competent jurisdiction, it shall not adversely affect any other provision of this agreement and reasonable opportunity and effort shall be taken to modify it to become enforceable.

### "Equality under the Law is PARAMOUNT and MANDATORY by Law"

**NOTICE TO THE PRINCIPAL IS NOTICE TO THE AGENT**
**NOTICE TO THE AGENT IS NOTICE TO THE PRINCIPAL**
Applicable to all successors and assigns
*Silence is Acquiescence/Agreement/Dishonor*

Executed on this 15th day of February, 2024 by, _____
Charles Mosely

### CREDITOR/DEBT COLLECTOR DECLARATION and PROOF OF CLAIM

*Debt Validation Proof of Claim  –<Your N. Here, Sr.>*

Case 25-03365   Document 2   Filed in TXSB on 06/06/25   Page 31 of 67
Case 25-31187   Document 38   Filed in TXSB on 05/15/25   Page 29 of 30
Case 4:24-cv-02236   Document 1-5   Filed on 06/12/24 in TXSD   Page 52 of 54

**Please provide all of the following information and submit the appropriate forms and paperwork back to me along with an Affidavit signed in Accordance with 28 U.S.C. § 1746 within 30 days from the date of your receipt of this request for validation and proof of claim.**

1. Alleged Name and Address of Creditor

2. Name on File of Alleged Debtor:

3. Alleged Account #:

4. Amount of alleged debt:

5. Date that this alleged debt became/becomes payable:

6. Date of original charge off or delinquency:

7. Amount paid if debt was purchased:

8. Please attach a copy of any signed agreement alleged debtor/claimant has made with debt collector, or other verifiable proof that debtor/claimant has a contractual obligation to pay debt collector.

9. Furnish a copy of the original promissory note/agreement redacting my social security number to prevent identity theft and state that your client named above is the holder in due course of the note agreement and will produce the original for my own and a judge's inspection should there be a trial to contest these matters.

10. Produce the account and general ledger statement showing the full accounting of the alleged obligation that you are now attempting to collect. Such as; FR 2046 balance sheet (OMB #'s 2046, 2049, 2099), 1099 OID report, S-3/A registration statement, 424-B5 prospectus, RC-S & RC-B call schedules

11. Identify by name and address all persons, corporations, associations, or any other parties having an interest in legal proceedings regarding the alleged debt.

12. Verified specifically, name(s) of person(s) assigned as Trustee to handle Corporations affairs and to be held accountable for the actions of the Corporation. Such as CFO and subordinates responsible for debt collections.

13. Verify as a third party debt collector, you have not purchased evidence of the alleged debt and are proceeding with collection activity in the name of the original maker of the note.

14. Verify you know and understand that certain clauses in a contract of adhesion, such as a so-called forum selection clause, are unenforceable unless the party to whom the contract is extended could have rejected the clause without impunity.

15. Provide verification from the stated creditor that you are authorized to act for them.

16. Verify that you know and understand that contacting me again after receipt of this notice without providing procedurally proper validation of the debt constitutes the use of interstate communications in a scheme of fraud by advancing a writing, which you know is false with the intention that others rely on the written communication to their detriment a violation of United States Code TITLE 18 PART 1 CHAPTER 63 § 1341.

Disputing the Debt,

Dated this 15th day of February, 2024,

By: _____
     Charles Mosely (expressly all rights reserved)

Case 25-03365   Document 2   Filed in TXSB on 06/06/25   Page 32 of 67
Case 25-31187   Document 38   Filed in TXSB on 05/15/25   Page 30 of 30
Case 24-32265   Document 1-5   Filed on 06/12/24 in TXSD   Page 53 of 54



**USPS PRIORITY CERTIFIED MAIL RECEIPT**
Domestic Mail Only

Selene Finance LP
P.O. Box 8619
Philadelphia PA 19101-8619

Total                     $8.73

Grand Total:              $8.73

Debit Card Remit         $58.73
  Card Name: MasterCard
  Account #: XXXXXXXXXXX9930
  Approval #: 2CE942
  Transaction #: 508
  Receipt #: 034648
  Debit Card Purchase: $58.73
  AID: A0000000042203        Chip
  AL: US Debit
  PIN: Verified
Cash Back               -$50.00

Text your tracking number to 28777 (2USPS)
to get the latest status. Standard Message
and Data rates may apply. You may also
visit www.usps.com USPS Tracking or call
1-800-222-1811.

Preview your Mail
Track your Packages
Sign up for FREE @
https://informeddelivery.usps.com

All sales final on stamps and postage.
Refunds for guaranteed services only.
Thank you for your business.

Tell us about your experience.
Go to: https://postalexperience.com/Pos
or scan this code with your mobile device.



or call 1-800-410-7420.

UFN: 480382-0058
Receipt #: 840-57700055-1-5450240-2
Clerk: 02

# EXHIBIT E

HOME    MAIL    NEWS    FINANCE    SPORTS    ENTERTAINMENT    LIFE    GAMES    SHOPPING    New iPhone    MORE...    SEA

Find messages, documents, photos or people   Advanced ⌄                                    Home

Compose                    ← Back    ↩    ⇜    →    🗋 Archive    ↪ Move    🗑 Delete    🛡 Spam    •••    ▲  ▼    ✕

| Inbox | 7.3K |
|---|---|

WRA000048057 CHARLES MOSELY                                    AT&T Yahoo.../Inbox  ☆

| Unread | |
| Starred | |
| Drafts | 176 |
| Sent | |
| Archive | |
| Spam | |
| Trash | |

^ Less

Views        Hide
📷 Photos
📄 Documents
👥 Emails to myself
📰 Subscriptions
✈ Travel

Folders      Hide
+ New Folder
| 1CLICKBK | |
| 2 amend | 2 |
| AARP | 23 |
| AB | 2 |
| ABEBOOKS | 16 |
| ACADEMY | |
| ACADI | 88 |
| ACAOM Clinic | |
| ACCORD | 12 |
| ACD | 3 |
| ADAM B | |
| ADOBE | |
| ALIBRIS | 5 |
| AMAZON | 205 |
| AMAZON DELE... | 126 |
| ANM fs | 5 |
| APPLE | |
| APPRAISAL REPAIR Q... | |
| AT T | |
| att wireless | 11 |
| ATTY Alton | |
| AUTO PARTS WH | 4 |

Personal Lines
From: personallines@wellingtoninsgroup.com
To: fredsk...@sbcglobal.net              Tue, Jun 3 at 5:36 PM  ☆

Good afternoon Mr. Mosely,

The requested Letter of Experience is attached.

Kindly,

**Ana M. Zapata**
Customer Care Unit – CSR I
Wellington Insurance Group
6801 Calmont Ave
Fort Worth, TX 76116
Phone: 800-880-0474
Email: personallines@wellingtoninsgroup.com

# Wellington.

www.wellingtoninsgroup.com

Confidentiality Notice:  This e-mail message is for the sole use of the intended recipient(s) and may contain confidential and privileged information exempt from disclosure under applicable law.  Unauthorized review, use, disclosure, or distribution is strictly prohibited.  If you are not the intended recipient, please contact the sender by reply e-mail and destroy the original and all copies of the message.  Thank you.

📄

Attachment.pdf
20.1kB

↩    ⇜    →    •••

Reply, Reply All or Forward

🗞  ▢  📧  ☺    •••

Aventus Insurance Company
P.O. Box 230
Fort Worth, TX  76101

Notice Date:  6/02/25
Reply Date:  6/02/25
Effective Date: 10/03/24
Expiration Date: 10/03/25
Policy Number: WRA 0̶0̶─̶─̶─̶─̶─̶─̶ 5

CHARLES MOSELY
3005 NITA ST
HOUSTON,TX 77051-4139

R.G. SMITH INSURANCE AGENCY
4660 Beechnut  Ste 250
Houston, TX 77096


Letter Of Experience for In-Force Policies


The above policy was issued by Aventus Insurance Company
for the above insured for a risk located at:
3005 Nita St
Houston TX 77051
This policy is currently in-force with an effective date of
10/03/2019 and an expiration date of 10/03/2025, with no
lapse in coverage.  To date, there have been 0 claims filed
on this policy.

We appreciate your business.

AZ3422
Underwriting Department

PP0002

Company Copy

WRA 000048057-5

# EXHIBIT F

Aventus Insurance Company
P.O. Box 230
Fort Worth, TX  76101

Notice Date:  2/26/24
Reply Date:  2/26/24
Effective Date: 10/03/23
Expiration Date: 10/03/24
Policy Number: WRA ████████████4

R.G. SMITH INSURANCE AGENCY
4660 Beechnut  Ste 250
Houston, TX 77096

CHARLES MOSELY
3005 NITA ST
HOUSTON,TX 77051-4139

Letter Of Experience for In-Force Policies

The above policy was issued by Aventus Insurance Company
for the above insured for a risk located at
3005 Nita St
Houston TX 77051
This policy is currently in-force with an effective date of
10/03/2019 and an expiration date of 10/03/2024, with no
lapse in coverage.  To date, there have been 0 claims filed
on this policy.

We appreciate your business.

AZ3422
Underwriting Department

PP0002

Agent Copy

WRA 000048057-4

# EXHIBIT G



**Southern Vanguard Insurance Company**
3730 Kirby Dr Ste 850
Houston, TX 77098

**RECISSION OF NONRENEWAL**

Customer Service: 1-888-432-9393
Claim Reporting: 1-888-432-9393

| | |
|---|---|
| **Policy Number:** TXHP1~~5994799-00~~ | **Policy Effective Date:** 5/29/2019 |
| **Process Date:** 07/31/2019 | **Policy Expiration Date:** 5/29/2020 |

**Named Insured and Mailing Address:**
CHARLES MOSELY
3005 NITA ST
HOUSTON , TX 77051

**Agency:** 3444
R.G. SMITH INSURANCE AGENCY

**Address:**
4660 BEECHNUT ST STE 250
HOUSTON, TX 77096-1837

**Phone Number:** (999) 999-9999

**Phone Number:** (713) 661-3246
**Email:** RGSMITHINS@ATT.NET

**YOUR POLICY WILL RENEW AS OF THE DATE AND TIME SHOWN ABOVE.**

The terms and conditions of the original policy remain unchanged.

**Location of Insured Property:** 3005 NITA ST
HOUSTON, TX. 77051

# EXHIBIT H



**TEXAS FAIR PLAN ASSOCIATION**

Date Processed:3/04/24
Policy Number:TFPH0■■■■■■■6
Policyholder:Charles Mosely
Property Location:3005 Nita St.
Houston,TX 77051

Agent Name:Charles Edward Foy
Agent Phone:(713) 661-3246
Agent Address:4660 Beechnut St Ste. 250
Houston, TX 77096-1832

To Whom it may concern:

The policyholder listed above had a Texas FAIR Plan policy from March 27, 2012,throughJuly 15, 2013, at the following location:

3005 Nita St
*Houston, TX 77051*

The following claim/loss (#TF00000050104) was paid to the insured during the time we insured the property.

| Date | Cause of Loss | Amount Paid | Status |
|------|---------------|-------------|--------|
| 4/27/2013 | Hail | $3,349.39 | Closed |

If you have any questions or concerns about this letter, please contact the agent or call us at (800) 979-6440.

Sincerely,

Texas FAIR Plan Association
Underwriting Department



**TEXAS FAIR PLAN ASSOCIATION**

Date Processed:3/04/24
Policy Number:TFPH̶~~~~~~~~~~
Policyholder:Charles Mosely
Property Location:3005 Nita St,
Houston,TX 77051

Agent Name:Charles Edward Foy
Agent Phone:(713) 661-3246
Agent Address:4660 Beechnut St Ste. 250
Houston, TX 77096-1832

To Whom it may concern:

The policyholder listed above had a Texas FAIR Plan policy from July 31,2013,throughMay 20, 2014, at the following location:

3005 Nita St
Houston, TX 77051

There were no losses paid to the insured during the time we insured the property.

If you have any questions or concerns about this letter, please contact the agent or call us at (800) 979-6440.

Sincerely,

Texas FAIR Plan Association
Underwriting Department



**TEXAS FAIR PLAN**
**ASSOCIATION**

Date Processed: 3/04/24
Policy Number: TFPH~~~~
Policyholder: Charles Mosely
Property Location: 3005 Nita St,
Houston, TX 77051

Agent Name: Charles Edward Foy
Agent Phone: (713) 661-3246
Agent Address: 4660 Beechnut St Ste. 250
Houston, TX 77096-1832

To Whom it may concern:

The policyholder listed above had a Texas FAIR Plan policy from May 27, 2014, through March 15, 2015, at the following location:

3005 Nita St
Houston, TX 77051

There were no losses paid to the insured during the time we insured the property.

If you have any questions or concerns about this letter, please contact the agent or call us at (800) 979-6440.

Sincerely,

Texas FAIR Plan Association
Underwriting Department

# EXHIBIT I

Return To:
WELLS FARGO BANK, N.A.
FINAL DOCUMENTS X9999-01M
1000 BLUE GENTIAN ROAD
EAGAN, MN 55121-1663

Prepared By:
WELLS FARGO BANK, N.A.
2701 WELLSFARGO WAY
MINNEAPOLIS, MN 55467-

────── Space Above This Line For Recording Data ──────

# DEED OF TRUST

 0183

NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated OCTOBER 3, 2008 together with all Riders to this document.

(B) "Borrower" is

CHARLES RAY MOSELY, AN UNMARRIED PERSON

Borrower is the grantor under this Security Instrument.
(C) "Lender" is WELLS FARGO BANK, N.A.

Lender is a National Association
organized and existing under the laws of THE UNITED STATES OF AMERICA

TEXAS - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Page 1 of 18        Initials: _____

GF # 08/22 798
27/B. NEUDORFER
STEWART TITLE CO.

FORM 3044   1/01
STX01A  Rev 07/11/07

THIS DOCUMENT HAS BEEN
ELECTRONICALLY RECORDED

APP. 1

either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or

RTX08   Rev 10/26/00             Page 8 of 18        Initials: _____        FORM 3044   1/01

APP. 8

(c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

STX29    Rev 11/13/00                    Page 9 of 19            Initials: _____        FORM 3044    1/01

Certified Document Number: 114616017 - Page 8 of 23

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage Insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

6TX10   Rev 10/26/00          Page 10 of 18          Initials: _____          FORM 3044   1/01

APP. 10

Certified Document Number: 114616017 - Page 9 of 23

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by

STX11    Rev 11/06/00              Page 11 of 19        Initials: _CM_        FORM 3044    1/01

APP. 11

Certified Document Number: 114616017 – Page 10 of 23

this Security Instrument by reason of any demand made by the original Borrower or any Successors in interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. **Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provision of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly

6TX12    Rev 11/06/00                    Page 12 of 19          Initials: _UW_          FORM 3044    1/01

Certified Document Number: 114616017 - Page 11 of 23

requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

18. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

STX13    Rev 11/08/00               Page 13 of 18          Initials: M.M.          FORM 3044    1/01

Certified Document Number: 114616017 - Page 12 of 23

APP. 13

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer or servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph.

ETX14   Rev 12/27/00                    Page 14 of 19          Initials: _____          FORM 3044   1/01

Certified Document Number: 114616017 - Page 13 of 23

APP. 14

The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environment Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice will result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or

6TX15   Rev 10/25/00          Page 15 of 19        Initials: CM         FORM 3044   1/01

Certified Document Number: 114616017 - Page 14 of 23

before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence. For the purposes of this Section 22, the term "Lender" includes any holder of the Note who is entitled to receive payments under the Note.

If Lender invokes the power of sale, Lender or Trustee shall give notice of the time, place and terms of sale by posting and filing the notice at least 21 days prior to sale as provided by Applicable Law. Lender shall mail a copy of the notice to Borrower in the manner prescribed by Applicable Law. Sale shall be made at public vendue. The sale must begin at the time stated in the notice of sale or not later than three hours after that time and between the hours of 10 a.m. and 4 p.m. on the first Tuesday of the month. Borrower authorizes Trustee to sell the Property to the highest bidder for cash in one or more parcels and in any order Trustee determines. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying indefeasible title to the Property with covenants of general warranty from Borrower. Borrower covenants and agrees to defend generally the purchaser's title to the Property against all claims and demands. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

If the Property is sold pursuant to this Section 22, Borrower or any person holding possession of the Property through Borrower shall immediately surrender possession of the Property to the purchaser at that sale. If possession is not surrendered, Borrower or such person shall be a tenant at sufferance and may be removed by writ of possession or other court proceeding.

23. Release. Upon payment of all sums secured by this Security Instrument, Lender shall provide a release of this Security Instrument to Borrower or Borrower's designated agent in accordance with Applicable Law. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. Substitute Trustee; Trustee Liability. All rights, remedies and duties of Trustee under this Security Instrument may be exercised or performed by one or more trustees acting alone or together. Lender, at its option and with or without cause, may from time to time, by power of attorney or otherwise, remove or substitute any trustee, add one or more trustees, or appoint a successor trustee to any Trustee without the necessity of any formality other than a designation by Lender in writing. Without any further act or conveyance of the Property the substitute, additional or successor trustees shall become vested with the title, rights, remedies, powers and duties conferred upon Trustee herein and by Applicable Law.

Trustee shall not be liable if acting upon any notice, request, consent, demand, statement or other document believed by Trustee to be correct. Trustee shall not be liable for any act or omission unless such act or omission is willful.

**25. Subrogation.** Any of the proceeds of the Note used to take up outstanding liens against all or any part of the Property have been advanced by Lender at Borrower's request and upon Borrower's representation that such amounts are due and are secured by valid liens against the Property. Lender shall be subrogated to any and all rights, superior titles, liens and equities owned or claimed by any owner or holder of any outstanding liens and debts, regardless of whether said liens or debts are acquired by Lender by assignment or are released by the holder thereof upon payment.

**26. Partial Invalidity.** In the event any portion of the sums intended to be secured by this Security Instrument cannot be lawfully secured hereby, payments in reduction of such sums shall be applied first to those portions not secured hereby.

**27. Purchase Money; Owelty of Partition; Renewal and Extension of Liens Against Homestead Property; Acknowledgment of Cash Advanced Against Non-Homestead Property.** Check box as applicable:

[X] **Purchase Money.**

The funds advanced to Borrower under the Note were used to pay all or part of the purchase price of the Property. The Note also is primarily secured by the vendor's lien retained in the deed of even date with this Security Instrument conveying the Property to Borrower, which vendor's lien has been assigned to Lender, this Security Instrument being additional security for such vendor's lien.

[ ] **Owelty of Partition.**

The Note represents funds advanced by Lender at the special instance and request of Borrower for the purpose of acquiring the entire fee simple title to the Property and the existence of an owelty of partition imposed against the entirety of the Property by a court order or by a written agreement of the parties to the partition to secure the payment of the Note is expressly acknowledged, confessed and granted.

[ ] **Renewal and Extension of Liens Against Homestead Property.**

The Note is in renewal and extension, but not in extinguishment, of the indebtedness described on the attached Renewal and Extension Exhibit which is incorporated by reference. Lender is expressly subrogated to all rights, liens and remedies securing the original holder of a note evidencing Borrower's indebtedness and the original liens securing the indebtedness are renewed and extended to the date of maturity of the Note in renewal and extension of the indebtedness.

[ ] **Acknowledgment of Cash Advanced Against Non-Homestead Property.**

The Note represents funds advanced to Borrower on this day at Borrower's request and Borrower acknowledges receipt of such funds. Borrower states that Borrower does not now and does not intend ever to reside on, use in any manner, or claim the Property secured by this Security Instrument as a business or residential homestead. Borrower disclaims all homestead rights, interests and exemptions related to the Property.

STX17   Rev 11/13/00          Page 17 of 19          Initials: BM          FORM 3044   1/01

APP. 17

Certified Document Number: 114616017 - Page 16 of 23

28. Loan Not a Home Equity Loan. The Loan evidenced by the Note is not an extension of credit as defined by Section 50(a)(6) or Section 50(a)(7), Article XVI, of the Texas Constitution. If the Property is used as Borrower's residence, then Borrower agrees that Borrower will receive no cash from the Loan evidenced by the Note and that any advances not necessary to purchase the Property, extinguish an owelty lien, complete construction, or renew and extend a prior lien against the Property, will be used to reduce the balance evidenced by the Note or such Loan will be modified to evidence the correct Loan balance, at Lender's option. Borrower agrees to execute any documentation necessary to comply with this Section 28.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____          Charles Ray Mosely  (Seal)
                                      CHARLES RAY MOSELY        Borrower

_____

STX18   Rev 12/27/00          Page 18 of 19          Initials: CM          FORM 3044   1/01

Certified Document Number: 11461601 7 - Page 17 of 23

APP. 18

STATE OF TEXAS
County of HARRIS

Before me _B. Neudorfer_ on this day personally appeared

CHARLES RAY MOSELY, AN UNMARRIED PERSON

known to me (or proved to me on the oath of
or through _T.D.L._ ) to be the person whose name is subscribed to
the foregoing instrument and acknowledged to me that he/she/they executed the same for
the purposes and consideration therein expressed.

Given under my hand and seal of office this 3RD day of OCTOBER, 2008

(Seal)

B. NEUDORFER
Notary Public, State of Texas
My Commission Expires 07-31-2009

Notary Public

My Commission Expires: 7/31/09

STX19   Rev  10/28/00                 Page 18 of 19        Initial ___        FORM 3044    1/01

Certified Document Number: 114616017 - Page 18 of 23

APP. 19

# EXHIBIT "A"

The West 33 feet of Lot Twenty-seven (27) and the adjoining East 22 feet of Lot Twenty-eight (28), in Block Twenty-four (24) of REEDWOODS, an addition in Harris County, Texas according to the map or plat thereof recorded in Volume 42, Page 71 of the Map Records of Harris County, Texas.

Certified Document Number: 114616017 - Page 19 of 23

APP. 20

ER 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

20080527729
# Pages 21
10/22/2008 08:14:52 AM
e-Filed & e-Recorded in the
Official Public Records of
HARRIS COUNTY
BEVERLY KAUFMAN
COUNTY CLERK
Fees 92.00

RECORDERS MEMORANDUM
This instrument was received and recorded electronically and any blackouts, additions or changes were present at the time the instrument was filed and recorded.

Any provision herein which restricts the sale, rental, or use of the described real property because of color or race is invalid and unenforceable under federal law.
THE STATE OF TEXAS
COUNTY OF HARRIS
I hereby certify that this instrument was FILED in File Number Sequence on the date and at the time stamped hereon by me; and was duly RECORDED in the Official Public Records of Real Property of Harris County, Texas.

COUNTY CLERK
HARRIS COUNTY, TEXAS

Certified Document Number: 114616017 - Page 20 of 23

# FIXED RATE NOTE

0183

OCTOBER 3, 2008                    HOUSTON                        TEXAS
_Date_                             _City_                         _State_

3005 NITA, HOUSTON, TX 77051
_____
(Property Address)

**1.  BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U S $  34,400 00    (this amount is
called "Principal"), plus interest, to the order of the Lender  The Lender is
WELLS FARGO BANK, N.A.
I will make all payments under this Note in the form of cash, check or money order

I understand that the Lender may transfer this Note  The Lender or anyone who takes this Note
by transfer and who is entitled to receive payments under this Note is called the "Note Holder"

**2   INTEREST**

Interest will be charged on unpaid principal until the full amount of Principal has been paid   I
will pay interest at a yearly rate of   6 875  %

The interest rate required by this Section 2 is the rate I will pay both before and after any default
described in Section 6(B) of this Note

**3.  PAYMENTS**

   **(A) Time and Place of Payments**

   I will pay principal and interest by making a payment every month

   I will make my monthly payment on the first day of each month beginning on   DECEMBER 1, 2008
   I will make these payments every month until I have paid all of the principal and interest and
   any other charges described below that I may owe under this Note  Each monthly payment will be
   applied  as of its scheduled due date and will be applied to interest before Principal

   If, on NOVEMBER 1, 2038        , I still owe amounts under this Note, I will pay those amounts in full
   on that date, which is called the "Maturity Date "

   I will make my monthly payments at WELLS FARGO BANK, N A
   P O BOX 11701, NEWARK, NJ  07101-4701
   or at a different place if required by the Note Holder

   **(B) Amount of Monthly Payments**
   My monthly payment will be in the amount of U S $       225 99

**4   BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due  A payment of
Principal only is known as a "Prepayment "  When I make a Prepayment, I will tell the Note Holder in
writing that I am doing so  I may not designate a payment as a Prepayment if I have not made all
the monthly payments due under the Note

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge  The
Note Holder will use all of my Prepayments to reduce the amount of Principal that I owe under this
Note  However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on
the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the
Note  If I make a partial Prepayment, there will be no changes in the due date or in the amount of
my monthly payment unless the Note Holder agrees in writing to those changes

MULTISTATE FIXED  TX            NOTE  Single Family  FNMA/FHLMC UNIFORM INSTRUMENT         FORM 3200 1/01
                                              1 of 3                                      EC011L  REV 04/18/04

APP. 22

Certified Document Number: 114616017 - Page 21 of 23




**5. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit, and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment

**6. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000% of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorney's fees

**7. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note

**9. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid

MULTISTATE FIXED  TX

NOTE  Single Family  FNMA/FHLMC UNIFORM INSTRUMENT
1 of 3

FORM 3200 1/01

ED051L  REV 04/18/02

Certified Document Number: 114616017 - Page 22 of 23

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions  In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note  That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts that I owe under this Note  Some of those conditions are described as follows

> If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument  However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law
>
> If Lender exercises this option, Lender shall give Borrower notice of acceleration  The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 16 within which Borrower must pay all sums secured by this Security Instrument  If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower

THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES
THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

*Charles Ray Mosely* (Seal)
CHARLES RAY MOSELY                    -Borrower

(Sign Original Only)

MULTISTATE FIXED    NOTE Single Family  FNMA/FHLMC UNIFORM INSTRUMENT        FORM 3200 1/01    EC011L  REV 04/04/02
                             2 of 2

APP. 24

**NOTICE OF TAX LIEN**



I, Marilyn Burgess, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date.
Witness my official hand and seal of office
this   February 28, 2025

Certified Document Number:        114616017

Marilyn Burgess, DISTRICT CLERK
HARRIS COUNTY, TEXAS

In accordance with Texas Government Code 51.301 and 406.013 electronically transmitted
authenticated
documents are valid. If there is a question regarding the validity of this document and or seal
please e-mail support@hcdistrictclerk.com

Certified Document Number: 114616017 - Page 4 of 23

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be

3TX06   Rev 11/06/00          Page 9 of 19        Initials: _____        FORM 3044   1/01

APP. 5

Lender's address is
P. O. BOX 5137, DES MOINES, IA 50306-5137
Lender is the beneficiary under this Security Instrument.

(D) "Trustee" is ROBERT K. FOWLER.
Trustee's address is
10333 RICHMOND #680, HOUSTON, TX 77042

(E) "Note " means the promissory note signed by Borrower and dated OCTOBER 3, 2008
The Note states that Borrower owes Lender THIRTY-FOUR THOUSAND FOUR HUNDRED
AND NO/100
(U.S. $ ........34,400.00...........) plus interest. Borrower has promised to pay this debt in regular
Periodic Payments and to pay the debt in full not later than   NOVEMBER 1, 2038

Dollars

(F) "Property" means the property that is described below under the heading "Transfer of
Rights in the Property."

(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges
and late charges due under the Note, and all sums due under this Security Instrument, plus
interest.

(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower.
The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider  ☐ Condominium Rider      ☐ Second Home Rider
☐ Balloon Rider          ☐ Planned Unit Development Rider  ☐ 1-4 Family Rider
☐ VA Rider               ☐ Biweekly Payment Rider  ☐ Other(s) [specify]

(I) "Applicable Law" means all controlling applicable federal, state and local statutes,
regulations, ordinances and administrative rules and orders (that have the effect of law) as
well as all applicable final, non-appealable judicial opinions.

(J) "Community Association Dues, Fees, and Assessments" means all dues, fees,
assessments and other charges that are imposed on Borrower or the Property by a
condominium association, homeowners association or similar organization.

(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction
originated by check, draft, or similar paper instrument, which is initiated through an
electronic terminal, telephonic instrument, computer, or magnetic tape so as to order,
instruct, or authorize a financial institution to debit or credit an account. Such term includes,
but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers
initiated by telephone, wire transfers, and automated clearinghouse transfers.

(L) "Escrow Items" means those items that are described in Section 3.

(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or
proceeds paid by any third party (other than insurance proceeds paid under the coverages
described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation
or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or
(iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or
default on, the Loan.

(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and
interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et
seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be

STX02   Rev 12/18/00              Page 2 of 18          Initials:         FORM 3044   1/01

APP. 2

Certified Document Number: 11461 6017 - Page 3 of 23

TOGETHER WITH all the improvements now or hereafter erected on the property, and

required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination

APP. 6

or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In

STX07   Rev 10/26/00                    Page 7 of 13          Initials: _____        FORM 3044   1/01

APP. 7